UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONCELY del CARMEN MENDEZ ROJAS, *et al.*,

Plaintiffs,

v.

JEH JOHNSON, Secretary of the Department of Homeland Security, in his official capacity, *et al.*,

Defendants.

CASE NO. C16-1024RSM

ORDER GRANTING MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Class Certification. Dkt. #7. Plaintiffs seek certification of two classes, each with two subclasses. *Id.* Defendants oppose the motion, arguing that the Plaintiffs lack standing, and fail to meet any of the class certification requirements. Dkt. #29. For the reasons set forth below, the Court disagrees with Defendants and now GRANTS Plaintiffs' motion.

## II. BACKGROUND

Plaintiffs are asylum seekers who challenge Defendants' alleged failure to provide them, and the classes they move to represent, with notice of the statutory requirement that an asylum seeker must apply for asylum within one year of arrival in the United States, 8 U.S.C. § 1158(a)(2)(B), as well as Defendants' alleged failure to provide a mechanism that ensures that

an asylum seeker is able to comply with that deadline. Dkt. #1. Plaintiffs allege that Defendants' policies and practices infringe on their and the proposed putative class members' statutory and regulatory rights to apply for asylum, often depriving them of those rights altogether, and also violate their right to due process under the Fifth Amendment to the United States Constitution. *Id.* Plaintiffs assert that the questions presented in this case – whether the DHS Defendants are obligated to provide Plaintiffs with notice of the one-year deadline when released from DHS custody, and whether the DHS and DOJ Defendants must provide a mechanism that ensures that Plaintiffs are able to apply for asylum in a timely manner – can and should be resolved on a class-wide basis. Dkt. #7 at 2.

For context, Plaintiffs have provided a brief background of the proposed class representatives:

> Plaintiff Rodriguez is a 37-year-old asylum seeker from Honduras. Mr. Rodriguez entered the United States in July 2014 and established a credible fear of persecution in an interview with USCIS. Subsequently, DHS released him from custody with an NTA, the charging document in removal proceedings, but did not inform him of the one-year deadline. DHS has not placed Mr. Rodriguez in removal proceedings yet. He only learned of the deadline when he sought counsel for his immigration case. His attempts to comply with the one-year deadline have been unsuccessful, however, as both USCIS and EOIR have rejected his asylum application – USCIS rejected it on the assumption that Mr. Rodriguez was in removal proceedings, so the application had to be filed with EOIR; EOIR rejected the application Mr. Rodriguez attempted to lodge because he is not actually in removal proceedings. As a result, he has been unable to file, or even lodge, his asylum application. *See* Dkt. 1 ¶ ¶ 60-66.
>
> Plaintiff Mendez is a 30-year-old asylum seeker from the Dominican Republic. Ms. Mendez entered the United States in September 2013 and established a credible fear of persecution in an interview with USCIS. Subsequently, DHS released her from custody with an NTA, but did not inform her of the one-year deadline. She only learned of the deadline when she sought counsel for her immigration case – *after* one year had already passed. As she had not yet been placed in removal proceedings, Ms. Mendez attempted to file an asylum application with USCIS, but USCIS rejected it on the assumption that she already was in removal proceedings.

> Only after this rejection – and more than one year after she entered the country – did DHS file the NTA with the immigration court, allowing Ms. Mendez to finally lodge her asylum application with the San Antonio Immigration Court. Her first immigration court hearing will be in August 2016. *See* Dkt. 1 ¶ ¶ 67-74.
>
> Plaintiff Lopez is a 37-year-old asylum seeker from Guatemala. In February 2014, she arrived at a Texas port of entry with two of her children and told the inspecting officers that she was afraid to return to Guatemala. DHS served Ms. Lopez and her children with NTAs and released them from custody with the requirement that they check in with DHS on a regular basis. DHS did not inform her of the one-year deadline. Ms. Lopez checked in with DHS on four occasions between March 2014 and September 2015, yet at no point did DHS inform her of the one-year deadline. In October 2015, she was issued a notice of hearing for November 2015 in the San Antonio Immigration Court. Ms. Lopez did not learn of the one-year deadline until she consulted an immigration attorney in December 2015. She lodged her asylum application with the court in January 2016, nearly two years after she arrived in the United States. The immigration judge subsequently terminated her removal proceedings, and she filed an asylum application affirmatively with USCIS in February 2016. USCIS has not yet scheduled an interview regarding her asylum application. *See* Dkt. 1 ¶ ¶ 75-81.
>
> Plaintiff Suarez is a 29-year-old asylum seeker from Mexico. She and her five young children arrived at a California port of entry in November 2013. Upon her arrival, Ms. Suarez informed DHS that she was afraid to return to Mexico and that she was seeking asylum in the United States. She provided DHS with a sworn statement regarding her fear of returning to Mexico. Shortly afterwards, DHS released her and her children from custody with NTAs, and paroled them into the country to await a removal hearing. At no point did DHS inform Ms. Suarez of the one-year deadline. She first learned of this requirement more than a year later, when she sought counsel. She then promptly lodged her application with the San Francisco Immigration Court. Ms. Suarez is scheduled for an individual hearing in May 2017. *See* Dkt. 1 ¶ ¶ 82-87.

Dkt. #7 at 8-10. In response to the instant motion, Defendants have not disputed these background facts as to each of the named Plaintiffs. *See* Dkt. #29.

Plaintiffs now request that the Court certify the following classes and subclasses:

> **CLASS A ("Credible Fear Class"):** All individuals who have been released or will be released from DHS custody after they have been found to have a credible fear of persecution within the meaning of 8 U.S.C. §

1225(b)(1)(B)(v) and did not receive notice from DHS of the one-year deadline to file an asylum application as set forth in 8 U.S.C. § 1158(a)(2)(B).

**A.I.:** All individuals in Class A who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

**A.II.:** All individuals in Class A who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

Dkt. #7 at 2.

**CLASS B ("Other Entrants Class"):** All individuals who have been or will be detained upon entry; express a fear of return to their country of origin; are released or will be released from DHS custody without a credible fear determination; are issued a Notice to Appear (NTA); and did not receive notice from DHS of the one-year deadline to file an asylum application set forth in 8 U.S.C. § 1158(a)(2)(B).

**B.I.:** All individuals in Class B who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

**B.II.:** All individuals in Class B who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

Dkt. #7 at 3.

Plaintiffs propose that Plaintiffs Elmer Geovanni Rodriguez Escobar and Concely del Carmen Mendez Rojas be appointed as representatives of Class A. Plaintiff Rodriguez moves to be appointed as representative of Subclass A.I., and Plaintiff Mendez Rojas moves to be appointed as representative of Subclass A.II. Dkt. #7 at 2. Plaintiffs further propose that Plaintiffs Maribel Suarez Garcia and Lidia Margarita Lopez Orellana be appointed as representatives of Class B. Plaintiff Lopez Orellana moves to be appointed as representative of Subclass B.I., and Plaintiff Suarez moves to be appointed as representative of Subclass B.II. Dkt. #7 at 3.

Plaintiffs also ask that the Court adopt the following definitions of certain terms for purposes of all four subclasses:

> an individual has "applied" for asylum when her application on Form I-589 is accepted, and not subsequently rejected, by either Defendant U.S. Citizenship and Immigration Services (USCIS) or Defendant EOIR. An application is rejected by USCIS where USCIS refuses to accept it or subsequently issues a rejection notice. An application is rejected by EOIR where EOIR refuses to accept it. Pursuant to current EOIR policy, an application is not "filed" if it is accepted for "lodging" purposes only. *See* Imm. Ct. Practice Manual 3.1(b)(iii)(A).

Dkt. #7 at 2 fn. 1.

## III. DISCUSSION

### A. Legal Standard

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Under Federal Rule of Civil Procedure Rule 23(a), the party seeking certification must first demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). In this case, Plaintiffs seek to certify a class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Dkt. #7 at 23-24; Fed. R. Civ. P. 23(b)(2). "Rule

23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Rule 23 "does not set forth a mere pleading standard." *Id.* at 350. Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51 (internal quotation omitted). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation omitted). Nonetheless, the ultimate decision regarding class certification "involve[s] a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

**B. Certification**

Plaintiffs assert that their proposed classes and subclasses satisfy all Rule 23(a) and Rule 23(b)(2) requirements. Accordingly, the Court addresses those arguments, in turn, below.

*1. Numerosity and Standing*

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). Plaintiffs assert that the proposed classes are numerous. Dkt. #7 at 14-16. Plaintiffs provide statistics for Fiscal Year 2016 from the Asylum Division of Defendant USCIS to assert that thousands of noncitizens express a fear of persecution to the DHS Defendants upon their arrival into the United States each month. *See* Asylum Division, USCIS, "Credible Fear Workload Report Summary: FY 2016 Total Caseload," at 1 *available at*

https://www.uscis.gov/sites/default/files/USCIS/Outreach/Upcoming%20National%20Engagements/CredibleFearReasonableFearStatisticsNationalityReports.pdf (last visited Jan. 9, 2017). Further, during that same year, the Asylum Division determined that 36,324 individuals who were originally detained and placed in expedited removal proceedings had a "credible fear" of persecution if returned to their home countries. *Id.* Accordingly, Plaintiffs believe that the majority, if not all, of these 36,324 individuals are putative Class A members.

In addition, Plaintiffs have presented Declarations from immigration attorneys around the country supporting the assertion that both Class A and Class B membership is too numerous for joinder. *See* Dkts. #13 at ¶ ¶ 3-6 and #19 at ¶ ¶5, 8 and 12-15. Finally, Plaintiffs note that "Defendants are in possession of the precise number of proposed class members, but Plaintiffs have demonstrated that the number of current and future class members, and the numerous reasons why it would be impractical to join them . . .".

Based on this evidence, "general knowledge," and "common sense," the Court can infer that both putative classes and their subclasses are sufficiently large. *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Further, each putative subclass includes "unnamed and unknown future" asylum applicants, and joinder of such "individuals is inherently impracticable." *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1320 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48.

However, the Court must also address Defendants' argument that Plaintiffs cannot meet the numerosity standard because none of the Plaintiffs can demonstrate an actual injury, and therefore they do not have standing. Dkt. #29 at 6-7. Standing has three elements: (1) an "injury in fact;" (2) a "causal connection between the injury and the conduct complained of"; and (3) redressability, meaning that the injury is likely capable of being redressed by a

favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). In a class action, standing is satisfied if "at least one named plaintiff meets the requirements." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). In this case, Defendants argue that none of the representative Plaintiffs has experienced any injury in fact, and that any future injury is purely speculative because they don't know whether their asylum applications will be denied. Dkt. #29 at 6-7.

The Court is not persuaded. Plaintiffs are not challenging any denial, past or future, of asylum. *See* Dkt. #30 at 3. Rather, they challenge "their right to timely apply for asylum." *Id.* That is, they challenge the denial of an opportunity to apply within the one-year deadline, which they allege is caused by Defendants' failure to provide adequate notice of the deadline and an alleged failure to implement a uniform method through which Plaintiffs can comply with that deadline. *Id.* The Ninth Circuit has made clear that Plaintiffs and the proposed class members have a statutory right to apply for asylum:

> Section 201(b) of the Refugee Act, 8 U.S.C. § 1158, conferred upon all aliens a statutory right to apply for asylum. *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 553 (9th Cir. 1990). That right may be violated by a pattern or practice that forecloses the opportunity to apply. *See Id.* at 564 (upholding finding that coercion of aliens to accept voluntary departure violated their right to apply for asylum). The same provision of the Refugee Act required the Attorney General to establish means by which aliens, regardless of status, may apply for political asylum. *See* 8 U.S.C. § 1158.

*Campos v. Nail*, 43 F.3d 1285, 1288 (9th Cir. 1994). Plaintiffs allege that the failures by Defendants have caused them to lose this right, and they must now rely on an immigration judge to find, in his or her discretion, that either changed circumstances or extraordinary circumstances justified their delayed filings. Dkt. #30 at 2; 8 U.S.C. § 1158(a)(2)(D) and 8 C.F.R. § § 208.4(a)(2)(B), a(4)-(5). If Plaintiffs' allegations are true, they have lost the

statutory right to apply for asylum and must now depend on the discretion of an adjudicator to apply. Accordingly, the Court finds that Plaintiffs have demonstrated standing.

Defendants next argue that this Court has no jurisdiction to review asylum applications, and that such applications must go to review in the Circuit Court of Appeals. Dkt. #29 at 7-8. Again, that argument misconstrues Plaintiffs' claims. Plaintiffs are not asking this Court to make any finding with respect to how immigration judges analyze the extraordinary circumstances exception. Rather, they allege that Defendants' action or inactions have deprived them of a statutory right to apply for asylum by foreclosing their opportunity to apply as of right. *See* Dkt. #30 at 4. Accordingly, the Court finds that Plaintiffs have standing.

Because the only arguments that Defendants present in response to Plaintiffs' assertion of numerosity pertained to standing, and based on the evidence of numerosity presented by Plaintiffs as discussed above, the Court concludes that the proposed classes and their subclasses are sufficiently numerous to satisfy Rule 23(a)(1).

*2. Commonality*

The requirement of "commonality" is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. A contention is capable of classwide resolution if "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Accordingly, "what matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* This requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019. Accordingly, "[a]ll questions of fact and

law need not be common to satisfy the rule." *Id.*; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

In this case, the Plaintiffs and proposed class members allege a violation of their statutory right to apply for asylum, including adequate notice of the statutory deadline and a meaningful opportunity to comply with that deadline. Dkt. #7 at 17-18. Those claims are also based on a common core of facts. *Id.* at 18. Defendants argue again that none of the Plaintiffs have demonstrated an injury in fact, and therefore cannot demonstrate commonality. Dkt. #29 at 8. The Court has already rejected that argument. Defendants also argue that Plaintiffs cannot demonstrate commonality because the resolution of the claims requires an individualized inquiry, and the government actually provides notice of the one-year deadline in several circumstances. Dkt. #29 at 8-10. This argument misses the mark. Plaintiffs assert that Defendants do not have a policy and practice of advising the proposed members of the classes of the filing deadline, and that they do not have an adequate mechanism for timely filing. Defendants do not dispute either of those claims. Rather they assert that some asylum seekers are provided with such notice and filing opportunities. Accordingly, the Court concludes that the resolution of the legal issues raised by Plaintiffs will generate one result for each member of the putative classes and subclasses. Thus, the Court agrees that these legal issues constitute a "common contention" that is "capable of classwide resolution." *Dukes*, 564 U.S. at 350.

*3. Typicality*

"[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d

497, 508 (9th Cir. 1992). Nonetheless, the "commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* In determining typicality, courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

Plaintiffs convincingly argue that all Individual Plaintiffs suffered the same injury as the putative class. Dkts. #7 at 20-22 and #30 at 7-10. Defendants primarily respond with the same arguments regarding injury in fact as have already been rejected by this Court. Dkt. #29 at 10-13. They are no more persuasive in the context of typicality. Accordingly, the Court concludes that the individual Plaintiffs are typical of the classes and subclasses they seek to represent.

*4. Adequacy*

Defendants have not separately addressed the adequacy requirement. Instead, they included their objections in their arguments as to typicality. Dkt. #29 at 10-13. For the same reasons above, the Court concludes that the individual Plaintiffs and their proposed counsel constitute adequate class representatives.

*5. Common Grounds*

Plaintiffs contend that their class action satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); Dkt. #7 at 23-24. "Class certification under Rule 23(b)(2) is appropriate

only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). The Court treats "[p]redominance and superiority a[s] self-evident," *Dukes*, 564 U.S. at 363, and requires "[o]nly a showing of cohesiveness of class claims," *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (citing *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 635 (W.D. Wash. 2011)).

In this case, the primary relief that Plaintiffs seek is declaratory and injunctive. Plaintiffs seek a declaration that the DHS Defendants' policy and practice of failing to give notice of the one-year deadline is contrary to the statute and the Constitution and that the DHS and DOJ Defendants' failure to provide uniform meaningful and reliable mechanisms within which to comply is contrary to the statute and the Constitution. Dkt. #1 at ¶ ¶ 127-131 and *Prayer for Relief*, ¶ ¶ d.-e.

Defendants argue that Plaintiffs fail to meet the 23(b)(2) standard because Defendants have not failed to act or refused to act on grounds applicable to the class. Dkt. #29 at 13-15. For the reasons set forth by Plaintiffs, the Court does not agree that Defendants have presented either a system whereby putative class members are guaranteed notice of the one-year filing deadline or a mechanism whereby putative class members are assured of the opportunity to timely file their asylum applications. *See* Dkt. #30 at 10-12.

Accordingly, the Court finds that Plaintiffs have also met the requirements of Rule 23(b)(2), and their proposed classes and subclasses should be certified.

## IV. CONCLUSION

Having reviewed Plaintiffs' motion for class certification, the opposition thereto and reply in support thereof, along with the Declarations submitted by the parties and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiffs' Motion for Class Certification (Dkt. #7) is GRANTED.

2. Plaintiffs have satisfied the class certification requirements as discussed above. Therefore, the following classes and subclasses are CERTIFIED:

   a. **CLASS A ("Credible Fear Class"):** All individuals who have been released or will be released from DHS custody after they have been found to have a credible fear of persecution within the meaning of 8 U.S.C. § 1225(b)(1)(B)(v) and did not receive notice from DHS of the one-year deadline to file an asylum application as set forth in 8 U.S.C. § 1158(a)(2)(B).

      i) **A.I.:** All individuals in Class A who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

      ii) **A.II.:** All individuals in Class A who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

   b. **CLASS B ("Other Entrants Class"):** All individuals who have been or will be detained upon entry; express a fear of return to their country of origin; are released or will be released from DHS custody without a credible fear determination; are issued a Notice to Appear (NTA); and did not receive notice from DHS of the one-year deadline to file an asylum application set forth in 8 U.S.C. § 1158(a)(2)(B).

      i) **B.I.:** All individuals in Class B who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

ii) **B.II.:** All individuals in Class B who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

3. Plaintiffs' proposed representatives will fairly and adequately protect the class interests as discussed above. Therefore, the following class representatives are APPOINTED:

   a. As Class A representatives: **Plaintiffs Elmer Geovanni Rodriguez Escobar and Concely del Carmen Mendez Rojas**. Plaintiff Rodriguez will also serve as representative of Subclass A.I., while Plaintiff Mendez will serve as representative of Subclass A.II.

   b. As Class B representatives: **Plaintiffs Maribel Suarez Garcia and Lidia Margarita Lopez Orellana**. Plaintiff Lopez will also serve as representative of Subclass B.I., while Plaintiff Suarez will serve as representative of Subclass B.II.

4. The Court also adopts Plaintiffs' definition of "applied" as defined in footnote 1 of their motion for class certification (Dkt. #7 at 3, fn. 1).

5. Plaintiffs' current counsel will also fairly and adequately protect the class interests as discussed above.

DATED this 10 day of January, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE