UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONCELY del CARMEN MENDEZ ROJAS, *et al.*,

Plaintiffs,

v.

JEH JOHNSON, Secretary of the Department of Homeland Security, in his official capacity, *et al.*,

Defendants.

CASE NO. C16-1024 RSM

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment. Dkt. #57. Plaintiffs assert that Defendants' failure to provide all class members with notice of the one-year asylum application deadline and failure to create and implement procedural mechanisms that guarantee class members the opportunity to timely submit their asylum applications violate the Immigration and Nationality Act ("INA"), Administrative Procedure Act ("APA"), governing regulations and due process. *Id.* Plaintiffs assert that based on the record before this Court summary judgment in their favor is appropriate. *Id.* Defendants oppose the motion, arguing that Plaintiffs seek to impute notice requirements that neither Congress nor the U.S. Constitution mandates, and the Court lacks jurisdiction over Plaintiffs' claim for new procedural mechanisms. Dkt. #61. For the reasons set forth below, the Court disagrees with Defendants and now GRANTS Plaintiffs' motion.

ORDER
PAGE - 1

## II. BACKGROUND

The Plaintiff class members are asylum seekers who challenge Defendants' alleged failure to provide them with notice of the statutory requirement that an asylum seeker must apply for asylum within one year of arrival in the United States, 8 U.S.C. § 1158(a)(2)(B), as well as Defendants' alleged failure to provide a mechanism that ensures that an asylum seeker is able to comply with that deadline. Dkt. #1. The Court has certified the following classes and subclasses in this matter:

> **CLASS A ("Credible Fear Class"):** All individuals who have been released or will be released from DHS custody after they have been found to have a credible fear of persecution within the meaning of 8 U.S.C. § 1225(b)(1)(B)(v) and did not receive notice from DHS of the one-year deadline to file an asylum application as set forth in 8 U.S.C. § 1158(a)(2)(B).
>
> **A.I.:** All individuals in Class A who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.
>
> **A.II.:** All individuals in Class A who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.
>
> **CLASS B ("Other Entrants Class"):** All individuals who have been or will be detained upon entry; express a fear of return to their country of origin; are released or will be released from DHS custody without a credible fear determination; are issued a Notice to Appear (NTA); and did not receive notice from DHS of the one-year deadline to file an asylum application set forth in 8 U.S.C. § 1158(a)(2)(B).
>
> **B.I.:** All individuals in Class B who *are not* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.
>
> **B.II.:** All individuals in Class B who *are* in removal proceedings and who either (a) have not yet applied for asylum or (b) applied for asylum after one year of their last arrival.

Dkt. #37.

For context, Plaintiffs have provided a brief background of the class representatives, which is undisputed by Defendants:

> Plaintiff Rodriguez is a 37-year-old asylum seeker from Honduras. Mr. Rodriguez entered the United States in July 2014 and established a credible fear of persecution in an interview with USCIS. Subsequently, DHS released him from custody with an NTA, the charging document in removal proceedings, but did not inform him of the one-year deadline. DHS has not placed Mr. Rodriguez in removal proceedings yet. He only learned of the deadline when he sought counsel for his immigration case. His attempts to comply with the one-year deadline have been unsuccessful, however, as both USCIS and EOIR have rejected his asylum application – USCIS rejected it on the assumption that Mr. Rodriguez was in removal proceedings, so the application had to be filed with EOIR; EOIR rejected the application Mr. Rodriguez attempted to lodge because he is not actually in removal proceedings. As a result, he has been unable to file, or even lodge, his asylum application. *See* Dkt. 1 ¶¶ 60-66.

> Plaintiff Mendez is a 30-year-old asylum seeker from the Dominican Republic. Ms. Mendez entered the United States in September 2013 and established a credible fear of persecution in an interview with USCIS. Subsequently, DHS released her from custody with an NTA, but did not inform her of the one-year deadline. She only learned of the deadline when she sought counsel for her immigration case – *after* one year had already passed. As she had not yet been placed in removal proceedings, Ms. Mendez attempted to file an asylum application with USCIS, but USCIS rejected it on the assumption that she already was in removal proceedings. Only after this rejection – and more than one year after she entered the country – did DHS file the NTA with the immigration court, allowing Ms. Mendez to finally lodge her asylum application with the San Antonio Immigration Court. Her first immigration court hearing will be in August 2016. *See* Dkt. 1 ¶¶ 67-74.

> Plaintiff Lopez is a 37-year-old asylum seeker from Guatemala. In February 2014, she arrived at a Texas port of entry with two of her children and told the inspecting officers that she was afraid to return to Guatemala. DHS served Ms. Lopez and her children with NTAs and released them from custody with the requirement that they check in with DHS on a regular basis. DHS did not inform her of the one-year deadline. Ms. Lopez checked in with DHS on four occasions between March 2014 and September 2015, yet at no point did DHS inform her of the one-year deadline. In October 2015, she was issued a notice of hearing for November 2015 in the San Antonio Immigration Court. Ms. Lopez did not learn of the one-year deadline until she consulted an immigration attorney in December 2015. She lodged her asylum application with the court in January 2016, nearly two years after she arrived in the United States. The immigration judge subsequently terminated

her removal proceedings, and she filed an asylum application affirmatively with USCIS in February 2016. USCIS has not yet scheduled an interview regarding her asylum application. *See* Dkt. 1 ¶ ¶ 75-81.

Plaintiff Suarez is a 29-year-old asylum seeker from Mexico. She and her five young children arrived at a California port of entry in November 2013. Upon her arrival, Ms. Suarez informed DHS that she was afraid to return to Mexico and that she was seeking asylum in the United States. She provided DHS with a sworn statement regarding her fear of returning to Mexico. Shortly afterwards, DHS released her and her children from custody with NTAs, and paroled them into the country to await a removal hearing. At no point did DHS inform Ms. Suarez of the one-year deadline. She first learned of this requirement more than a year later, when she sought counsel. She then promptly lodged her application with the San Francisco Immigration Court. Ms. Suarez is scheduled for an individual hearing in May 2017. *See* Dkt. 1 ¶ ¶ 82-87.

Dkt. #7 at 8-10.

Plaintiffs allege that Defendants' policies and practices infringe on their statutory and regulatory rights to apply for asylum, often depriving them of those rights altogether, and also violate their right to due process under the Fifth Amendment to the United States Constitution.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

## B. Notice of One-Year Asylum Application Deadline

### 1. Alleged Violation of the INA and APA

Under 8 U.S.C. § 1158(a)(1), "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section. . . ." "The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under" that statute. 8 U.S.C. § 1158(b)(1)(A). However, the foregoing "shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). If an alien does not apply within one year after arrival in the United States, "the application for asylum may be considered if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum

ORDER
PAGE - 5

or extraordinary circumstances relating to the delay in filing an application" within the one-year period. 8 U.S.C. § 1158(a)(2)(D).

Plaintiffs first argue that because the ability to exercise the right to apply for asylum is contingent upon filing in a timely manner, when Defendants[1] fail to provide notice of the one-year deadline or delay providing notice, they violate congressional intent, and as a result violate both the INA and the APA. Dkt. #57 at 8. Defendants acknowledge that they do not provide blanket notice to all asylum seekers at the time they are apprehended, during the credible fear determination, or upon release, but respond that no such statutory notice requirement exists. Dkt. #61 at 4-5. As a result, Defendants assert that they have not violated the law and summary judgment on this basis must be denied.

Plaintiffs have relied on certain congressional history in support of their argument. Specifically, Plaintiffs point to Senator Orrin Hatch's comments on the Omnibus Consolidated Appropriations Act, 1997, which he made on September 30, 1996. Dkt. #57 at 8 (citing 142 CONG. Rec. S11,840 (daily ed. Sept. 20, 1996)(statement of Sen. Hatch)). Senator Hatch stated:

> Like my distinguished colleague from Michigan, I too supported the Senate provision, which received overwhelming, bipartisan support in the Senate. In fact, that provision was adopted by an amendment in the Judiciary Committee that passed by unanimous consent. The Senate provisions had established a 1-year time limit only on defensive claims of asylum, that is, those raised for the first time in deportation proceedings, and provided for a good cause exception.
>
> Let me say that I share the Senator's concern that we continue to ensure that asylum is available for those with legitimate claims of asylum. The way in which the time limit was rewritten in the conference report--with the two exceptions specified--was intended to provide adequate protections to those with legitimate claims of asylum. I expect that circumstances covered by the

---

[1] The Court acknowledges that not every legal argument raised by Plaintiffs applies to each separate Defendant, and that some arguments are directed toward the Agency Defendants, while some are directed at the Individual Defendants. However, for ease of reference, the Court simply refers in its discussion to "Defendants" in the plural, and will differentiate a particular Defendant or group of Defendants if and when it becomes necessary in making specific rulings.

ORDER
PAGE - 6

Senate's good cause exception will likely be covered by either the changed circumstances exception or the extraordinary circumstances exception contained in the conference report language. The conference report provision represents a compromise in that, unlike the Senate provision, it applies to all claims of asylum, whether raised affirmatively or defensively.

[Question by] Mr. ABRAHAM. Would you say that the intent in the changed circumstances exception is to cover a broad range of circumstances that may have changed and that affect the applicant's ability to obtain asylum?

Mr. HATCH. Yes. That exception is intended to deal with circumstances that changed after the applicant entered the United States and that are relevant to the applicant's eligibility for asylum. The changed circumstances provision will deal with situations like those in which the situation in the alien's home country may have changed, the applicant obtains more information about likely retribution he or she might face if the applicant returned home, and other situations that we in Congress may not be able to anticipate at this time.

[Question by] Mr. ABRAHAM. It is my understanding that the second exception, for extraordinary circumstances, relates to legitimate reasons excusing the alien's failure to meet the 1-year deadline. Is that the case?

Mr. HATCH. Yes, the extraordinary circumstances exception applies to reasons that are, quite literally, out of the ordinary and that explain the alien's inability to meet the 1-year deadline. Extraordinary circumstances excusing the delay could include, for instance, physical or mental disability, unsuccessful efforts to seek asylum that failed due to technical defects or errors for which the alien was not responsible, and other extenuating circumstances.

[Question by] Mr. ABRAHAM. If the time limit and the exceptions you have discussed do not provide sufficient protection to aliens with bona fide claims of asylum, I will be prepared to work with my colleagues to address that problem. Is my understanding correct that you too will pay close attention to how this provision is interpreted?

Mr. HATCH. Yes. Like you, I am committed to ensuring that those with legitimate claims of asylum are not returned to persecution, particularly for technical deficiencies. If the time limit is not implemented fairly, or cannot be implemented fairly, I will be prepared to revisit this issue in a later Congress. I would also like to let the Senator from Michigan know how much I appreciate his commitment and dedication on this issue.

142 CONG. Rec. S11,839-840. Plaintiffs argue that by failing to give notice of the one-year filing period, Defendants effectively reduce that filing period, even though Congress did not intend for the one-year time period to foreclose legitimate claims. Dkt. #57 at 8. The Court agrees.

In adopting the one-year application period, Senators Hatch and Abraham were concerned about potential limitations on the rights of applicants with legitimate claims. Indeed, Senator Hatch recognized that the Senate had initially adopted a provision with an application time limit for only those applicants raising a defensive claim of asylum – that is, for applicants raising asylum as a defense to removal, rather than those applicants affirmatively seeking asylum upon entry into this country. *See supra*. Senator Hatch then explained that the two exceptions later added were intended to cover a range of changed or extraordinary circumstances to assist those applicants with legitimate claims of asylum with making their applications. *Id.* However, to address congressional concerns, Senator Hatch specifically stated that he would be watching how the one-year time limit was being implemented to make sure it was "implemented fairly." *Id.* As demonstrated by Plaintiffs, and more fully discussed below in the context of due process, the failure to provide all class members with notice of the one-year application period violates the intent to ensure that asylum is available for those with legitimate claims of asylum. This is particularly true where unsuccessful efforts to seek asylum have failed due to technical defects, which the adopted exceptions were specifically designed to prevent. Accordingly, the Court agrees that the failure to provide notice of the one-year application period violates congressional intent.

///

///

ORDER
PAGE - 8

2. *Alleged Violation of 5th Amendment Due Process Clause*

Plaintiffs next argue that Defendants' failure to provide adequate notice of the one-year application time limit violates the due process clause of the Fifth Amendment. Dkt. #57 at 8-15. Specifically, Plaintiffs assert that Defendants do not provide notice that is reasonably calculated to timely convey information about the deadline, and that the failure to provide notice violates procedural due process rights. *Id.* Defendants respond that they do provide notice of the time limit and that Plaintiffs do not use the correct standard with respect to the procedural due process claim. Dkt. #61 at 6-15. Defendants also believe that *Mullane* rather than *Mathews v. Eldridge* governs all parts of Plaintiffs' due process claim.

In *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 336, 70 S. Ct. 652, 95 L. Ed. 865 (1950), the United States Supreme Court examined the constitutional sufficiency of notice. The Court explained:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer*, 311 U.S. 457; *Grannis* v. *Ordean*, 234 U.S. 385; *Priest* v. *Las Vegas*, 232 U.S. 604; *Roller* v. *Holly*, 176 U.S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean, supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller* v. *Holly, supra*, and *cf. Goodrich* v. *Ferris*, 214 U.S. 71. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co*. v. *Zeiss*, 219 U.S. 47, 67; and see *Blinn* v. *Nelson*, 222 U.S. 1, 7.
>
> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski*, 274 U.S. 352, with *Wuchter* v.

ORDER
PAGE - 9

> *Pizzutti*, 276 U.S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Mullane*, 339 U.S. at 314-15. Relying on *Mullane*, Plaintiffs argue that Defendants' failure to affirmatively require officials to provide any notice of the one-year deadline is a policy that is not "reasonably calculated" to provide notice to the class members. Dkt. #57 at 9.

Defendants respond that while they are admittedly not required to provide any notice to class members, they actually do provide notice. Dkt. #61 at 6. They point to the Information Guide for Prospective Asylum Applicants, Form I-589 and its Instructions, self-help materials provided by officials to detainees and the Know Your Rights video shown to many detainees. Dkt. #61 at 6-7. Defendants note that the Ninth Circuit Court of Appeals has held that publicly available documents can provide sufficient notice. *Id.* at 7-10.

However, Defendants fail to address Plaintiffs' argument that while courts make such recognition, public notice is not always sufficient. Both the Ninth Circuit and other circuits have recognized that whether affirmative notice beyond publicly-available documents is necessary is dependent on the circumstances of the case. *See*, *e.g.*, *Martinez-De Bjorquez v. Ashcroft*, 365 F.3d 800 (9th Cir. 2004). Under the *Mullane* standard, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 393 U.S. at 314, 70 S. Ct. at 657. "The right to be heard has little reality or worth unless one . . . can choose for himself whether to appear or default, acquiesce or contest." *Id.*; *see also City of West Covina v. Perkins*, 525 U.S. 234, 240, 119 S. Ct. 674, 142 L. Ed.2d 636 (1999) (citing *Mullane* for this proposition). In determining whether the asylum statute apprises the class members of their right to file an asylum application so long as it is within one year of their arrival in the United States, the Court recognizes that the

ORDER
PAGE - 10

class members lose the right to make such an application outside of that time period unless, at the sole discretion of an administrative law or other judge, an exception is made. Thus, for a notice to be reasonably calculated to apprise class members of the time limit, as *Mullane* requires, the notice must be reasonably calculated to apprise Class A members of this right upon a credible fear determination, and Class B members when they express a fear of returning to their country, but are released or will be released without a credible fear determination and are instead issued a Notice to Appear. Moreover, as demonstrated by the record in this matter, given the lengthy delays inherent in this country's immigration system, the Court assumes that if the class members are unaware of the one-year time limit, there is a substantial likelihood that they will not file their applications on time. Thus, under the *Mullane* standard, the Court must consider whether the documents relied upon by Defendants are reasonably calculated, under all of the circumstances of this case, to provide class members of the one-year deadline. The Court finds that they do not.

First, the Court concludes that the statute alone is not reasonably calculated to apprise the tenants of the one-year time period. In considering all of the circumstances of this case, it is important to recognize the limitations of the persons seeking asylum. As Plaintiffs note, many class members have suffered severe trauma, do not speak English, are unfamiliar with the United States' complicated immigration legal system, and do not have access to counsel. *See* Dkt. #57 at 11. The Court agrees that these vulnerabilities are compounded by the notices that are provided to class members, that notify them they are able to seek relief from removal by appearing before an Immigration Judge, but do not mention the one-year deadline for filing an application for asylum. *Id.*

In *Grayden v. Rhodes*, 345 F.3d 1225 (11th Cir. 2003), the Eleventh Circuit Court of Appeals addressed an analogous situation. In that case, the Court examined whether evicted tenants had adequate notice of remedies available to them under City code. The Court explained:

> Although the Orlando City Code is a publicly available document and the law presumptively charged the evicted tenants of Lafayette Square with knowledge of its provisions, the law does not presume that the tenants *actually knew* of their right to challenge the condemnation when they received the notice to vacate on June 29 and 30. The law does not entertain the legal fiction that every individual has achieved a state of legal omniscience; in other words, there is no presumption that all of the citizens actually know all of the law all of the time. Practically speaking, citizens must educate themselves about the law before they can wield the rights dedicated to them under it, and the Supreme Court's approach to statutory notice takes account of this reality. *See West Covina*, 525 U.S. at 241, 119 S. Ct. at 682 (noting that an individual "can turn to these public sources to learn about the remedial procedures available to him"); *id.* at 242, 119 S. Ct. at 682 (noting that a citizen "could not reasonably be expected to educate himself about the procedures available to protect his interests"); *United States v. Locke*, 471 U.S. 84, 108, 105 S. Ct. 1785, 1799-1800, 85 L. Ed. 2d 64 (1985) (noting that citizens need "a reasonable opportunity . . . to familiarize themselves with the general requirements imposed" by a new law); *Atkins v. Parker*, 472 U.S. 115, 130, 105 S. Ct. 2520, 2529, 86 L. Ed. 2d 81 (1985) (noting that the presumption that all citizens are charged with knowledge of the law arguably may be overcome in cases in which the statute "does not allow a sufficient 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it"); *Texaco, Inc. v. Short*, 454 U.S. 516, 532, 102 S. Ct. 781, 793, 70 L. Ed. 2d 738 (1982) ("Generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply."). We conclude, in the circumstances of this case, that § 30A.11 of the Orlando City Code was not reasonably calculated to inform the tenants of Lafayette Square, who faced the burdens associated with an eviction and had less than thirty-six hours to vacate their homes, of their right to choose between acquiescing in or contesting Rhodes' condemnation order.

*Grayden*, 345 F.3d at 1242-43. Central to the Court's analysis was the fact that the evicted tenants had little time to accomplish numerous complicated tasks. *Id.* The Court finds this reasoning persuasive in this case.

ORDER
PAGE - 12

Moreover, the Ninth Circuit recognizes that notice which is "confusing" and "affirmatively misleading" is not sufficient to satisfy due process. *Walters v. Reno*, 145 F.3d 1032, 1043 (9th Cir. 1998) (holding that a form lacking relevant information "lulls the [noncitizen] into a false sense of procedural security"); *see also United States v. Charleswell*, 456 F.3d 347, 356-57 (3rd Cir. 2006) (in a situation involving a misleading form, finding that "it is simply unrealistic to expect [a noncitizen] to recognize, understand and pursue his statutory right" to judicial review absent additional notice); *United States v. Montero*, No. CR-12-0095 EMC, 2012 U.S. Dist. LEXIS 134941 (N.D. Cal. Sep. 20, 2012) ("When 'the combined effect of all the forms together is confusion,' notice to the immigrant is constitutionally deficient.") (quoting *Walters*).

The Court agrees with Plaintiffs that class members face just such a situation in this case. *See* Dkt. #62 at 5-6. By definition, they have all asserted the desire to apply for asylum, but were not provided asylum applications or notice of the one-year deadline. Instead, Defendants provide class members with a variety of documents, some stating that once they appear in court they will be provided with any necessary information about and/or the opportunity to seek relief from removal. *See, e.g.*, Dkt. #58-1, Exs. N and O. In addition, Class A members may reasonably believe they have *already* applied for asylum in their credible fear interviews. *See*, *e.g.*, Dkts. #15 at ¶ 8 ("[S]everal of my clients have told me that they believed they had applied for asylum by passing the credible fear interview because during that process they told an asylum officer in detail about their asylum claim. . . . They are surprised when I tell them that they need to complete another application for asylum in writing."); #16 at ¶ 7 ("[S]ome of these individuals think that because they have a received a positive credible fear determination, they have been granted asylum."); and #19 at ¶ 9 ("Many of the individuals released from DHS custody are under

ORDER
PAGE - 13

the assumption that they have *already applied* for asylum"). The Court agrees with Plaintiffs that such confusion is further compounded because class members are especially vulnerable. *See* Dkt. #57 at 10-12. Thus, class members are reasonably unaware that they should seek out information about any possible deadline.

The Court further agrees that other types of notice which Defendants provide to class members does not meet their obligations under the due process clause. As noted above, Defendants must provide notice that "afford[s] a reasonable time for those interested to make their appearance." *Mullane*, 339 U.S. at 314 (citations omitted). Notice provided through immigration court hearings, which may be scheduled only after the one-year deadline has already elapsed, is not provided at a reasonable time. *See* Dkt. #57 at 19 (discussing cases in which a Notice to Appear (NTA) is not filed with an immigration court until more than a year after entry). Likewise, other forms of notice that Defendants may provide earlier in the process are insufficient because they are not provided to all class members. *See Walters*, 145 F.3d at 1045 (requiring provision of additional notice even though some individuals "may have received adequate notice in spite of the constitutionally deficient official procedures"). Defendants admit that they have no policy requiring uniform provision of such notice.

For all of these reasons, the Court concludes that Agency Defendants do not provide sufficient notice of the one-year deadline to satisfy the Due Process clause. Because Defendant agrees that the applicable standard is set forth under *Mullane*, *supra*, there is no need for this Court to address similar arguments set forth by Plaintiffs under *Mathews v. Eldridge*. *See* Dkt. #57 at 12-15.

///

///

ORDER
PAGE - 14

## C. Meaningful Application Mechanisms

The Court next turns to Plaintiffs' arguments that Defendants' failure to provide a uniform mechanism to timely file their asylum applications violates the asylum statute and the APA, and that it violates due process. Dkt. #57 at 15-24. Plaintiffs first assert that even if class members become aware of the one-year filing period, Defendants have created a system that makes it virtually impossible to timely file for asylum. Dkt. #57 at 15-22. Plaintiffs further assert that the Department of Homeland Security refuses to accept asylum applications filed by class members on the basis that jurisdiction to adjudicate those applications is going to, at some point in the future, vest with the immigration court; but, at the same time, an immigration court will not accept an application until, at a very minimum, an NTA has been filed with that court. Dkt. #57 at 15. Plaintiffs note that in some cases, an NTA is not filed until the class member has been in the United States for more than a year. *Id.* "Where the immigration court does not promptly process the NTA, and the filing deadline passes, there is no venue for class members to file their asylum applications and, thus, Defendants violate class members' statutory right to apply for asylum." *Id.* at 16.

Defendants respond in a footnote, that this Court lacks jurisdiction over this claim. Dkt. #61 at 16, fn. 17. The Court has already twice rejected this argument, and will not further address it here. *See* Dkts. #37 at 9 and #41 at 3-4.

Defendants next argue that the data upon which Plaintiffs rely is outdated and/or does not demonstrate that class members are denied a mechanism to timely file their applications. Dkt. #61 at 16-21. Defendants further argue that this Court must give deference to the procedures in place. *Id.* at 17-18. The Court is not persuaded. First, the undisputed facts demonstrate delays of more than a year. Indeed, the record evidences more than isolated delays in immigration courts

from Los Angeles to Boston to San Francisco and Cleveland. Dkts. #31 at ¶¶ 4-5, #32 at ¶¶ 4 and 7, #33 at ¶¶ 6 and 13 and #34 at ¶ 5. Defendants argue that evidence of delays in the Los Angeles Immigration Court in 2015 and 2016 is "dated," Dkt. #61 at 17; however, these delays occurred only a few months before this lawsuit was filed. Other evidence demonstrates that similar delays have continued into this year. Dkt. #58, Exs. P, U, W, X, Y and Z. *See also* Dkts. #14 at ¶ 11 and #15 at ¶ 11. Furthermore, Defendants admit that there is no "temporal deadline on ICE's filing of an NTA with the immigration court or EOIR's entry of a filed NTA into its systems." Dkt. #61 at 20.

Defendants next argue that "the Court must afford deference to that procedure." Dkt. #61. However, no deference is owed to procedures that violate a statute or the Constitution. *See Schneider v. Chertoff*, 450 F.3d 944, 952 (9th Cir. 2006) ("[W]e must reject those [agency] constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement.") (citing *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984)). As noted above, denying class members the opportunity to timely file their asylum application violates their statutory right to apply for asylum under the INA. Likewise, the refusal to accept Class B asylum applications is inconsistent with the plain language of 8 C.F.R. § 208.2(a), stating that the USCIS "shall have initial jurisdiction" over such applications. The Court agrees with Plaintiffs that Defendants' efforts to contract their own jurisdiction violates "[t]he general rule" that "administrative agencies directed by Congress to adjudicate particular controversies" "may not decline to exercise" this authority. *See Union Pacific R.R. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 71 (2009).

For these reasons, the Court finds that Defendants have left class members without an adequate mechanism to timely file their asylum applications, thereby denying them the

ORDER
PAGE - 16

opportunity to exercise their statutory right to apply for asylum. Thus, they are afforded relief under the APA. Because the Court finds relief appropriate on this basis, it declines to address Plaintiffs' argument pertaining to due process. *See* Dkt. #57 at 22-24.

## IV. CONCLUSION

Having reviewed Plaintiffs' motion for summary judgment, the opposition thereto and reply in support thereof, along with the Declarations and Exhibits submitted by the parties and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiffs' Motion for Summary Judgment (Dkt. #57) is GRANTED as set forth above.

2. Within 90 days of this Order, DHS Defendants SHALL ADOPT a notice of the one-year filing deadline, in consultation with class members, and to thereafter provide this notice to all class members who have already been released. For all future class members who have not been released, DHS Defendants SHALL provide this notice prior to or at the time that these individuals are released from custody.

3. Defendants are ordered to accept as timely filed any asylum application from a class member that is filed within one year of the date of adoption of the notice described in paragraph 2.

4. Within 120 days of this Order, all Defendants SHALL ADOPT and publicize, in consultation with class members, uniform procedural mechanisms that will ensure that class members are able to file their asylum applications in a timely manner, and to thereafter immediately implement this procedure.

5. This case is now CLOSED.

///

ORDER
PAGE - 17

DATED this 29th day of March 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE